O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANNETTE JONES, | ) | NO. CV 06-6187-CT |
| | ) | |
| Plaintiff, | ) | OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| LINDA S. McMAHON, | ) | |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY,[1] | ) | |
| Defendant. | ) | |
| | ) | |

For the reasons set forth below, it is ordered that judgment be entered in favor of defendant Acting Commissioner of Social Security ("the Commissioner") because the Commissioner's decision is supported by substantial evidence and is free from material legal error.

SUMMARY OF PROCEEDINGS

On October 4, 2006, Annette Jones ("plaintiff"), filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act"). The parties filed a

---

[1] On January 20, 2007, Linda S. McMahon became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Linda S. McMahon should be substituted, therefore, for Commissioner JoAnne B. Barnhart as the defendant in this suit.

consent to proceed before the magistrate judge. On January 12, 2007, plaintiff filed her brief with points and authorities in support of remand or reversal. On February 1, 2006, the Commissioner filed a brief.

## SUMMARY OF ADMINISTRATIVE RECORD

1. Proceedings

On October 18, 2004, plaintiff filed an application for supplemental Security Income ("SSI"), alleging disability since June 1, 2002 due to left hip pain, uterus/bladder problems and hand pain. (TR 11, 48-49, 66).[2] In seeking reconsideration she additionally alleged arthritis of the hip, back pain and a learning disability. (TR 33). The application was denied initially and upon reconsideration. (TR 28-32, 35-39).

On July 29, 2005, plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (TR 41). On January 31, 2006, plaintiff, in pro se, appeared and testified before an ALJ. (TR 160-174). The ALJ also considered vocational expert ("VE") testimony. On March 23, 2006, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, because her impairments do not prevent the performance of her past work. Thus, plaintiff was not eligible for benefits. (TR 11-14). On June 22, 2006, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision. (TR 7). On July 28, 2006, the request was denied. (TR 4-6). Accordingly, the ALJ's decision stands as the final decision of the Commissioner.

---

[2] "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

Plaintiff subsequently sought judicial review in this court.

2. <u>Summary Of The Evidence</u>

The ALJ's decision is attached as an exhibit to this opinion and order and materially summarizes the evidence in the case.

PLAINTIFF'S CONTENTIONS

Plaintiff contends as follows:

1. The ALJ erred by failing to consider the treating physician's opinion of disability;
2. The ALJ erred by failing to pose a complete hypothetical question to the vocational expert;
3. The ALJ erred by failing to consider the plaintiff's alleged borderline intellectual functioning a severe impairment; and,
4. The ALJ erred by failing to properly develop the record.

STANDARD OF REVIEW

Under 42 U.S.C. §405(g), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal standards. <u>Macri v. Chater</u>, 93 F.3d 540, 543 (9th Cir. 1996). Substantial evidence means "more than a mere scintilla," <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), but less than a preponderance. <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the Court may not substitute its judgment for that of the Commissioner. <u>Flaten v. Secretary of Health and Human Services</u>, 44 F.3d 1453, 1457 (9th Cir. 1995). The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for

rehearing." 42 U.S.C. §405(g).

## DISCUSSION

### 1. The Sequential Evaluation

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. First, it is determined whether the person is engaged in "substantial gainful activity." If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform

4

other kinds of work.  The person is entitled to benefits only if the person is unable to perform other work.  20 C.F.R. § 416.920; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987).

    2.  <u>Issues</u>

        A.  <u>Treating Physician's Opinion</u> (Issue 1)

Plaintiff contends that the ALJ erred by failing to consider a September 14, 2005 note on a prescription pad by a Dr. Hans Weber of High Desert Medical Group stating: "Ms. Jones is currently unable to work with her L arm." (TR 139).  Plaintiff contends that Dr. Weber was her treating physician.

A treating physician's opinion generally is entitled to great weight.  <u>See</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citation omitted).  "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability."  <u>Andrews v. Shalala</u>, 53 F.3d at 1041 (citation omitted).  The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  <u>See</u> 20 C.F.R. § 416.927.

Even if a treating physician's opinion is contradicted by other doctors, the ALJ cannot reject that opinion without providing specific and legitimate reasons supported by substantial record evidence.  <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2001) (citation omitted).  "[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole," or "by objective medical findings."  <u>Batson v. Commissioner of the Social Security Administration</u>, 359 F.3d 1190, 1195 (9th Cir. 2004).

First, it is unclear that Dr. Weber is a "treating physician."  <u>See</u>

1  20 C.F.R. § 416.902 (defining "treating source" as a physician who has,
2  or has had, an "ongoing treatment relationship," although a physician
3  who has evaluated plaintiff only a few times may be a treating source if
4  the nature and frequency of treatment is typical for the condition).
5  Dr. Weber's name appears on one note on a prescription pad. (TR 139).
6  Plaintiff states that she saw him in June and July of 2005, he indicated
7  that she may have some curvature of the spine, and he ordered testing
8  but no treatment. (TR 85, 87, 89).  There are **no treatment notes** from
9  Dr. Weber or any other evidence indicating that he oversaw plaintiff's
10 treatment – plaintiff's test and X-ray results indicate that the testing
11 was performed at the direction of her primary care physician.[3] (See TR
12 148-59).  Instead, it appears that Dr. Weber saw plaintiff one or two
13 times at most.  Cf. Benton v. Barnhart, 331 F.3d 1030, (9th Cir.
14 2003)(psychiatrist qualified as a treating physician despite seeing
15 plaintiff only once, where he continued to oversee her care and had
16 opportunities to direct and communicate with plaintiff's treatment
17 team).

18     Even assuming that Dr. Weber qualifies as a treating physician and
19 assuming, based on his spare notation, that he opined on September 14,
20 2005 that plaintiff "currently" could not use her arm at work, his
21 opinion indicates at most a transient symptom. See Howard v. Barnhart,
22 341 F.3d 1006, 1012(9th Cir. 2003)(ALJ need not discuss evidence that is
23 neither significant nor probative).  The treatment records indicate that
24 plaintiff's complaints focused primarily on pain in her abdomen/pelvis

---

[3] The ALJ gave plaintiff an opportunity to submit additional evidence and held the record open for two weeks. (TR 165).  She did not submit any treatment records from Dr. Weber.

and hip, rather than arm pain. (See, e.g. TR 99-100, 107, 115, 117-18, 120, 123, 133, 151-52). Plaintiff did not allege arm pain in her application for benefits except to state that pain in her hands sometimes "goes up my arm," or in her request for reconsideration. (TR 33, 66). She did not mention arm pain in her pain questionnaire and said that her pain was located in her "hip bones." (TR 63). At the hearing and in her disability report on appeal she alleged arm pain as well as pain all over her body, (TR 84,165, 168), but alleged the arm pain was a "new" pain.[4] (TR 84). On August 19, 2005, her primary care physician, Dr. Natividad De Jesus, contended in a claim for disability insurance benefits that plaintiff's pain was in her neck, back and hip.[5] (TR 144). The ALJ found plaintiff's allegations of disabling pain not credible, a finding not challenged here. Moreover, contrary to her contention in this court that Dr. Weber's note indicates that she cannot use her arm at work, she testified that she could lift up to 20 pounds, which is consistent with the demands of her past work. (TR 167-68). She also stated in her pain questionnaire that "driving is not a problem" and that she is able to handle light housework. (TR 64-65).

In reaching his decision, the ALJ considered the medical evidence of record. Plaintiff's treatment records and test results do not evidence any impairment in plaintiff's arm. In fact, she tested within normal range for rheumatoid arthritis factor (TR 146) and X-rays of her

---

[4] She alleged on administrative appeal that the arm pain began in May of 2003 (TR 84), but she did not mention arm pain in her November, 2004 pain questionnaire responses. (TR 63-65).

[5] The ALJ rejected Dr. DeJesus' unsupported opinions of disability. (TR 12). Plaintiff does not challenge that finding in this court.

hand were negative for any abnormalities. (TR 150). In addition, the ALJ relied on the findings of Dr. Shahrzad Sodagar-Marvasti, who examined plaintiff consultatively on December 31, 2004. (TR 12, 92-95). Plaintiff told Dr. Sodagar-Marvasti that she had pain in her back and hands. The doctor thoroughly examined plaintiff and found that plaintiff's range of motion was normal, she had no neurological deficits, normal motor strength, good grip strength and no atrophy. (TR 94-95). Dr. Sodagar-Marvasti also noted that plaintiff had worked as a home health care aide for an elderly woman in 2004 (TR 57, 67, 95), although plaintiff is claiming disability since June of 2002. (TR 67). The doctor opined that plaintiff was capable of performing work at the medium exertional level with no postural or manipulative limitations. (TR 95). Dr. Sodagar-Marvasti's conclusions are consistent with the assessments of the state agency physicians, who concluded that plaintiff did not have a severe impairment (TR 97, 138), and with the objective medical evidence in the record. Accordingly, substantial evidence supports the ALJ's determination. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record").

The ALJ did not materially err in his consideration of Dr. Weber's note.

        B.   VE Hypothetical (Issue 2)

Plaintiff contends that the ALJ erred by failing to pose a complete hypothetical question to the vocational expert because the ALJ failed to include the limitations concerning her arm in the note written by Dr.

Weber.

Although hypothetical questions posed to the VE must set out all of the plaintiff's limitations and restrictions, <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988), the hypothetical need only include those limitations that the ALJ finds credible and supported by substantial evidence. See <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005)(ALJ's reliance on VE testimony was proper where hypothetical to the VE "contained all of the limitations that the ALJ found credible and supported by substantial evidence").

As discussed above, Dr. Weber's note did not indicate or establish anything more than a transient symptom and the ALJ's finding that plaintiff's unsupported allegations concerning disabling pain and limitations are not credible is unchallenged. Accordingly, the ALJ did not materially err by failing to include Dr. Weber's note about plaintiff's arm in his hypothetical question to the VE.

        C.   <u>Alleged Mental Impairment</u> (Issues 3 and 4)

Finally, plaintiff contends that the ALJ erred by failing to find the plaintiff's alleged borderline intellectual functioning a severe impairment and failing to develop the record concerning her alleged mental impairment.

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. § 416.921(b); <u>Bowen v.</u>

1  Yuckert, 482 U.S. 137, 141-42 (1987).

2  Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. Id. at 146. "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those [plaintiffs] whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Id. at 153.

11  Plaintiff's allegations concerning her mental impairment were not consistent and were raised only after her claims of disability based on her physical complaints were rejected. For example, plaintiff did not allege a mental impairment in her application for benefits (TR 61-62, 66-67) or her request for a hearing (TR 41). She first mentioned a learning disability in her request for reconsideration. (TR 33). At the hearing she did not raise her alleged mental impairment until the VE opined that she could perform her past work despite her physical complaints. (TR 170). As the state agency physician noted, plaintiff's responses in her application were appropriate and coherent and she was able to clearly report her condition and its impact on her activities. (TR 138). Plaintiff's testimony at the hearing was similarly coherent and appropriately responsive.

24  Moreover, plaintiff submitted scant evidence of any mental impairment. She submitted only a one page form from Antelope Valley College indicating that she qualified as a developmentally delayed learner based on her "standard score" of between 71 and 80 on an

unspecified test, her history of special education and academic skill deficiency. (TR 91, 171). However, she submitted no medical evidence, such as intelligence testing by a psychiatrist or psychologist, supporting her claim that she has a learning disability. See Ukolov v. Barnhart, 420 F.2d 1002, 1006 (9th Cir. 2006)(where plaintiff submitted no evidence of a physician's diagnosis of a medically determinable impairment, ALJ did not err in finding lack of impairment at step two of the sequential evaluation); see also 20 C.F.R. §§ 416.908(mental impairment must be established by medical evidence); 416.912 ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled"); 416.913(evidence from medically acceptable sources required).

Plaintiff contends that the ALJ failed in his duty to develop the record by obtaining plaintiff's special education records. The ALJ does have a duty to fully and fairly develop the record, particularly where a plaintiff is unrepresented at the hearing. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)(citations omitted). The ALJ may discharge this duty in several ways, including: (1) subpoenaing plaintiff's physicians; (2) submitting questions to plaintiff's physicians; (3) continuing the hearing; or, (4) keeping the record open after the hearing to allow for supplementation of the record. Id. (citations omitted).

At the hearing, the ALJ gave plaintiff additional time to submit additional evidence supporting her benefits claim and an envelope with instructions on how to submit the evidence. (TR 165). Plaintiff submitted no additional evidence except a one-page blood test result. (See TR 159).

Moreover, the ALJ's duty to develop the record is not unlimited. The duty to "conduct an appropriate inquiry" is triggered when the evidence is ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. Id. (citations omitted); see also Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (finding that the record was neither ambiguous nor inadequate and ALJ had no duty to develop the record by diagnosing plaintiff's herniated discs when plaintiff did not submit medical records or testimony establishing plaintiff's back condition). In addition, while an ALJ has a duty to fully and fairly develop the record, *plaintiff* has the burden of establishing a prima facie case of disability. Mayes v. Massanari, 276 F.3d at 459.

Here, plaintiff submitted no medical evidence of a mental impairment and the ALJ did not find that the record evidence was ambiguous or incomplete. He questioned plaintiff about her education and past work at the hearing. Her testimony was not wholly consistent with her prior statements. She testified that she had taken college courses, but had "struggled" and gotten some Cs, Ds and some fails. (TR 171). In her application, however, she claimed that she was seeking an associates' degree and had completed some classes, but could not attend school anymore "because of my hands." (TR 62). She was in special education classes, but only in seventh grade. (TR 170). In addition, although she testified that she did not have enough credits to graduate high school, in her application she stated that she completed the twelfth grade. (TR 70). Moreover, she was able to perform her past relevant work despite her alleged learning disability (TR 57-62) and contended that her physical complaints, rather than a learning

disability, caused her to leave her last job. (TR 164, 166).

In any event, the VE testified that plaintiff could still perform two of the jobs constituting her past relevant work with the learning limitations she described. (TR 169, 173).

Thus, a claim of borderline intellectual functioning is not supported by the record. The error, if any, in the ALJ's consideration plaintiff's alleged learning disability was not material. See Curry v. Sullivan, 925 F.2d at 1129-30(ALJ's mistaken conclusion regarding plaintiff's age and education was harmless error when denying benefits because it did not affect result).

## CONCLUSION

If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. Flaten v. Secretary of Health and Human Services, 44 F.3d at 1457.

After careful consideration of the record as a whole, the magistrate judge concludes that the Commissioner's decision is supported by substantial evidence and is free from material legal error. Accordingly, it is ordered that judgment be entered in favor of the Commissioner.

DATED: February 12, 2007

CAROLYN TURCHIN
------
CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE